# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 30, 2014

Plaintiff-Appellee,

v

No. 315652
Ingham Circuit Court
LC No. 12-000669-FC

LAWRENCE FREDERICK GIBBS,

Defendant-Appellant.

Before: METER, P.J., and WHITBECK and RIORDAN, JJ.

PER CURIAM.

Defendant, Lawrence Frederick Gibbs, appeals as of right his conviction, following a jury trial, of one count of first-degree criminal sexual conduct (CSC I),[1] and three counts of second-degree criminal sexual conduct (CSC II).[2] The trial court sentenced Gibbs as a second-offense habitual offender[3] to serve concurrent terms of 300 to 600 months' imprisonment for his CSC I conviction and 107 to 270 months' imprisonment for his CSC II convictions. We affirm.

## I. FACTS

### A. THE COMPLAINANTS' TESTIMONIES

The first complainant was 30 years old at the time of trial. According to the 30-year-old complainant, he lived next door to Gibbs when he was growing up. He and his younger sister were often left alone, and he was pleased that Gibbs paid attention to him. When he was between six and eight years old, he was helping Gibbs "set[] primers," an activity that involved explosives and bullets and that he thought was "cool." When he and Gibbs were alone, Gibbs

---

[1] MCL 750.520b(1)(a) (sexual penetration with a person under 13 years of age).

[2] MCL 750.520c(1)(a) (sexual contact with a person under 13 years of age) and (b)(iii) (sexual contact with a person at least 13 but less than 16 years of age when the actor is in a position of authority).

[3] MCL 769.10.

pulled his shorts and underwear down and performed fellatio on him. Gibbs told him that he would get in trouble if he told anyone.

The 30-year-old complainant testified that further abuse occurred several times over several years, and ended when he was 13 years old. According to the 30-year-old complainant, he took a job at Gibbs's business in 2006, when he was 19 years old. Gibbs at some point vaguely apologized to the complainant for what he did to the complainant as a child. The 30-year-old complainant testified that this triggered memories and he confronted Gibbs and reported the abuse to the police in 2006, but he did not hear anything until police contacted him in 2012.

The second complainant was 14 years old when he was abused. According to the 14-year-old complainant, he and his brother, the 13-year-old complainant, moved to Holt, Michigan from Arizona because their mother abused substances. He began working for Gibbs's maintenance business at some point in 2011 or 2012. Gibbs began offering to crack the complainant's back. The 14-year-old complainant would lie on his stomach and Gibbs would use his hands to crack the complainant's back. Gibbs would crack the 14-year-old complainant's back both when other people were and were not around.

According to the 14-year-old complainant, if Gibbs cracked his back when no one else was around, Gibbs would ask him to lower his pants so that Gibbs could "replace" his hip. Gibbs would massage his back and buttocks. On one occasion, Gibbs offered to give the complainant a buzz-cut. While the complainant's shirt was off, Gibbs hugged him and put his hands down the inside of the complainant's pants and rubbed his buttocks. The 14-year-old complainant testified that he stopped working for Gibbs after that incident.

The third complainant testified that he was the 14-year-old complainant's brother and was 13 years old when he was abused. According to the 13-year-old complainant, he began helping Gibbs do odd jobs. At some point, Gibbs convinced the 13-year-old complainant to let Gibbs crack his back. After Gibbs cracked his back, he turned the 13-year-old complainant over and began massaging the complainant's thighs and calves. Gibbs touched the complainant's testicles. The 13-year-old complainant testified that Gibbs touched his penis and testicles on other occasions after that.

The fourth complainant was 8 years old when he was abused. The 8-year-old complainant testified that at some point, Gibbs and two teenagers installed a furnace in his home's basement. According to the 8-year-old complainant, he was playing in the basement with his sister but his sister went upstairs. Gibbs approached him and asked him what his name was. Gibbs stood very close to him, Gibbs's crotch touched his crotch, and Gibbs moved his waist in a circle. Gibbs walked away when one of the teenagers said that he needed to ask Gibbs a question.

The 8-year-old complainant's mother testified that, in May 2012, she discovered that Gibbs had been arrested for "something involving a child." Gibbs had installed a furnace for her around Christmas of 2011. According to the complainant's mother, she asked the complainant about Gibbs. The complainant said that Gibbs made him feel "very awkward" and stood too close to him. The complainant's mother asked the 9-year-old complainant to show her what he meant, and the 9-year-old complainant pushed his body against her and pushed his hips against

her. The complainant's mother testified that the complainant's demonstration caught her off guard and she called the police.

## B. OTHER INCIDENTS OF CHILD ABUSE UNDER MCL 768.27a

Witness 1 testified that he was 50 years old at the time of trial and met Gibbs when he was 13 or 14 years old. According to Witness 1, Gibbs lived with Witness 1's grandmother for a year and spent time with his family. Gibbs visited on Fourth of July while other family members were visiting. The sleeping arrangements required Witness 1 to share a bed with Gibbs and his uncle. Witness 1 woke up in the middle of the night to Gibbs fondling Witness 1's penis. Gibbs then performed fellatio on Witness 1 and told Witness 1 that it would be their secret. Witness 1 testified that he and Gibbs performed fellatio on each other on over 20 occasions over the next two years.

Witness 2 testified that he is Gibbs's nephew and went to a family gathering with Gibbs when he was 8 or 9 years old. Gibbs offered to sleep in a tent with Witness 2 in front of the cabin where the family was staying because Witness 2 was afraid to sleep behind the cabin with the other family members. Witness 2 awoke to find Gibbs rubbing his penis. On another occasion, Witness 2 spent the night on Gibbs's couch and woke to find Gibbs playing with his penis. Witness 2 testified that he did not say anything until he was 19 or 20 years old and Gibbs was being prosecuted for something similar in Barry County. Witness 2 testified that Gibbs pleaded no contest to CSC IV charges in Missaukee County.

Witness 3 testified that he worked for Gibbs when he was 15 years old. According to Witness 3, he had a rough childhood and was borderline truant. The first time he was alone with Gibbs, Gibbs pulled Witness 3's pants to the floor. Witness 3 became upset and Gibbs said he was just joking around. Gibbs initiated a lot of hugging and back-cracking. When Witness 3 was 16 years old, Gibbs provided him with Jack Daniels and they drank it. Gibbs then performed fellatio on Witness 3. Witness 3 continued to work for Gibbs for two more years, and Gibbs touched his penis on two more occasions.

According to Witness 3, he confronted Gibbs when he was 18 years old, after learning that "it happened" to other people. Witness 3 testified at a preliminary hearing in Barry County, and learned that Gibbs pleaded to contributing to the delinquency of a minor.

## C. OTHER ACTS WITNESSES UNDER MRE 404(b)

Witness 4 testified that he began working for Gibbs when he was 21 years old. According to Witness 4, Gibbs would sometimes pull down Witness 4's shorts and underwear. On one occasion, Gibbs pressed a vibrating pager to Witness 4's genitals. Gibbs would also have Witness 4 take off his shirt or pants to massage Witness 4, and sometimes Gibbs would touch Witness 4's buttocks or genitals. Witness 4 did not say anything because he did not want to be fired. Witness 4 had a young child.

Witness 4 testified that one time after he had fallen off a ladder and was in bed, Gibbs came over to his house to give him a massage. After Gibbs massaged him, Gibbs began performing fellatio on him. Witness 4 testified that he was shocked and embarrassed, but continued to work for Gibbs until he found another job to provide for his family.

Witness 5 testified that he worked for Gibbs when he was 15 years old. According to Witness 5, Gibbs initiated a lot of hugging, massages, and back-cracking. Once while massaging Witness 5, Gibbs turned Witness 5 over and touched his penis during the course of a massage. Once while camping at Gibbs's hunting property, Witness 5 shard a bed with Gibbs and awoke to Gibbs touching his penis. Witness 5 testified that Gibbs touched his penis on other occasions, but he did not tell anyone because his father was dying and his mother was under a lot of stress.

Witness 5 testified that he and Witness 3 confronted Gibbs. Witness 5 testified that this confrontation resulted in Gibbs being prosecuted in Barry County.

Witness 6 testified that he began working for Gibbs when he was 19 years old. According to Witness 6, Gibbs would give him hugs and crack his back. On one occasion, after Gibbs cracked Witness 6's back, Gibbs laid down next to Witness 6 and touched Witness 6's genitals. Witness 6 made it clear that he was not interested. On another occasion, after cracking Witness 6's back, Gibbs tried to touch their penises together while Witness 6 was wearing his underwear.

Witness 7 testified that he worked for Gibbs when he was 16 years old. According to Witness 7, he did not get along with his father and Gibbs tried to assume a fatherly role with him. Gibbs would give Witness 7 hugs, insert his legs between Witness 7's legs while hugging him, and rub his groin against Witness 7's groin. Gibbs would also rub his genitals against Witness 7's buttocks while cracking Witness 7's back. Witness 7 spoke to the police about Gibbs in 1998, but he was told that the police would not do anything because he was over 16 years old.

## II. JOINDER

## A. STANDARD OF REVIEW AND ISSUE PRESERVATION

Generally, this Court reviews for clear error the trial court's findings of fact and review de novo questions of law related to criminal joinder.[4] However, a defendant must raise an issue before the trial court for the issue to be preserved.[5] We review unpreserved issues for plain error affecting a party's substantial rights.[6] An error is plain if it is clear or obvious.[7] The error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings.[8]

---

[4] *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009).

[5] *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004).

[6] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[7] *Id*. at 763.

[8] *Id*.

## B. LEGAL STANDARDS

To determine whether joinder is permissible, a trial court must first find the relevant facts and then decide whether those facts constitute 'related' offenses for which joinder is appropriate."[9] The trial court may join offenses into a single trial if those offenses are sufficiently related.[10]

MCR 6.120(C) requires the trial court to sever charges on unrelated offenses for separate trials if the defendant moves for separate trials. MCR 6.120(B)(1)(c) provides that offenses are related if they are based on "a series of acts constituting parts of a single scheme or plan." However, "joinder of . . . other crimes cannot prejudice the defendant more than he would have been prejudiced by the admissibility of the other evidence in a separate trial."[11]

## C. APPLYING THE STANDARDS

Gibbs contends that the trial court should have severed his trial into three separate trials because the 30-year-old complainant, the 8-year-old complainant, and the 13- and 14-year old complainants' allegations involved sufficiently different circumstances. We disagree.

The trial court need not sever offenses that involve a series of ongoing acts that are part of a single scheme. In *People v Gaines*, a panel of this Court considered whether the trial court should have severed the defendant's trials for accosting two children for immoral purposes and CSC III against two victims, involving three children between the ages of 13 and 15.[12] The panel rejected the defendant's assertion that the trial court should have severed the trial into three trials.[13] The panel concluded that the similarities in the defendant's methods of communicating with and isolating the children showed evidence of a single scheme.[14] The panel further reasoned that evidence of the defendant's actions against each separate victim would have been admissible in each other victim's case pursuant to MCL 768.27a,[15] which allows the trial court to admit evidence of a defendant's other crimes against minors for any relevant purposes.

The facts in this case are substantially similar to those in *Gaines*. The circumstances of each case was substantially similar, showing Gibbs's scheme of using his maintenance business to isolate and exploit young men and young boys in order to initiate contact with them for the

---

[9] *Williams*, 483 Mich at 231.

[10] MCR 6.120(B).

[11] *Williams*, 483 Mich at 237, quoting *United States v Harris*, 635 F2d 526, 527 (CA 6, 1980) (alteration and quotation marks omitted).

[12] *People v Gaines*, ___ Mich App ___; ___ NW2d ___ (2014), slip op at 1-2.

[13] *Id*. at ___, slip op at 9.

[14] *Id*.

[15] *Id*.

purposes of sexual gratification. Three of the four complainants' complaints involved Gibbs asserting authority over them; each of the complainants' cases involved Gibbs exploiting the operation of his business to sexually assault boys and young men when the business's clients were not present. Further, each of the complainants was a minor when Gibbs sexually assaulted them. Therefore, evidence from each of the complainant's trials would have been admissible as evidence in the other complainants' trials under MCL 768.27a.

Accordingly, we conclude that joinder of Gibbs's charges did not prejudice him. The most prejudicial evidence—that of the complainant witnesses and the other MCL 768.27a witnesses—would have been admissible at each of Gibbs's trials, had those trials been separate. Therefore, we conclude that Gibbs has failed to demonstrate that the trial court's failure to sever his charges into three trials was either a plain error, or an error that affected his substantial rights.

### D. INEFFECTIVE ASSISTANCE

Gibbs contends that trial counsel was ineffective for failing to move to sever his charges into three separate trials. We reject this argument.

Counsel is not ineffective for making futile challenges.[16] Here, for the reasons stated above, the trial court properly joined Gibbs's charges into a single trial because all his charges concerned a single plan or scheme of isolating boys and young men using his business. Accordingly, counsel was not ineffective for failing to move to sever the trials because such a challenge would have been futile.

### E. DUE PROCESS

Gibbs briefly asserts that joinder of his trials deprived him of his state and federal right of Due Process. Improper joinder constitutes a constitutional violation "only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."[17] Because we have rejected Gibbs's argument that joinder of his charges prejudiced him, we also reject his due process challenge on the same grounds.

### III. OTHER ACTS WITNESSES

### A. MRE 404(B) WITNESSES

### 1. STANDARD OF REVIEW

This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings.[18] The trial court abuses its discretion when it chooses an outcome outside

---

[16] *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

[17] *United States v Lane*, 474 US 438, 446, n 8; 106 S Ct 725; 88 L Ed 2d 814 (1986).

[18] *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001).

the range of reasonable and principled outcomes.[19]   We review de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it.[20]   Even if properly preserved, an error in the admission of other acts evidence does not require reversal unless it is more probable than not that the error was outcome determinative.[21]

## 2. LEGAL STANDARDS

Generally, MRE 404(b)(1) prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts to prove that person's character or propensity to engage in that type of action.  Such evidence

> may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . .[22]

The trial court properly admits other acts evidence if the proponent establishes that (1) it is offering the evidence for a proper purpose, (2) the evidence is relevant to a fact of consequence at trial, and (3) the evidence is not substantially more prejudicial than probative.[23]

## 3. APPLYING THE STANDARDS

Gibbs contends that the trial court erred by admitting the evidence of so many other acts witnesses.  We disagree.

The fact that so many witnesses testified about so many similar instances of sexual contact with Gibbs makes their testimony logically relevant for the purposes of MRE 404(b):

> If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance.[24]

Here, each of the MRE 404(b) witnesses testified about instances in which Gibbs inappropriately touched their genitals or inappropriately rubbed his genitals against them with or

---

[19] *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007)

[20] *Layher*, 464 Mich at 761.

[21] *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001).

[22] MRE 404(b)(1).

[23] *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000).

[24] *People v Mardlin*, 487 Mich 609, 617; 790 NW2d 607 (2010).

without clothing. Gibbs explained incidents with the complainants as mere accidents or misinterpretations. For instance, Gibbs contended that he brushed past the 9-year-old complainant, but did not sexually assault him. Evidence that Gibbs had frequently engaged in inappropriate contact was relevant to establish that it was not probable that the incidents with the complainants were mere mistakes or misinterpretations.

Gibbs also contends that the prosecutor did not admit the evidence for a proper purpose because the various MRE 404(b) witnesses' assaults were too dissimilar from the assaults against the complainants to constitute evidence of a single plan or scheme. We disagree.

Evidence relates to a common plan or scheme when it indicates that a defendant's actions are "part of a single continuing conception or plot."[25] Acts are part of a common plan or scheme if "common features . . . indicate the existence of a plan rather than a series of similar spontaneous acts . . . ."[26] There may be some differences in specific instances of a given plan or scheme.[27]

Common features of the complainants' testimonies include that they were boys or young men. Each of the complainants was isolated. Gibbs was in a position of actual or implied authority over each of the complainants: with the 30-, 14-, and 13-year old complainants, Gibbs employed them, and with the 8-year-old complainant, Gibbs was the only adult in the basement. Each of the complainants was first the subject of innocuous contact: with the 30-, 14-, and 13-year old complainants, hugs, massages, and back-cracking, and with the 8-year-old complainant, initiating an innocuous conversation. Each of the complainants was then subject to sexual contact, including fellatio, fondling, or rubbing.

Witness 4 testified that he began working for Gibbs when he was 21 years old. Gibbs used innocuous contact, such as massages, to initiate sexual contact with Witness 4. Gibbs performed fellatio on Witness 4 while he was alone at his home in bed and while he employed Witness 4. Witness 4 was older than the complainants. However, we conclude that there were sufficient common features for Witness 4's testimony to provide evidence of a common plan or scheme. Witness 4 was a young man. Gibbs's used his authority as to Witness 4, and Witness 4's isolation, to initiate sexual contact with him.

Witness 5 testified that he worked for Gibbs when he was 15 years old. Witness 5 testified that Gibbs initiated a lot of innocuous contact, such as massages, hugging, and back-cracking, and then used that contact to touch Witness 5's penis. Witness 5 was close in age to the 13- and 14-year-old complainants. Further, Witness 5's testimony illustrated Gibbs's plan or scheme of using his position of authority over a young man to initiate innocuous contact, which

---

[25] *Sabin*, 463 Mich at 63-64.

[26] *Id*. at 65.

[27] See *People v Steele,* 283 Mich App 472, 480; 769 NW2d 256 (2009); *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009).

eventually turned into sexual contact. We conclude that Witness 5's testimony was sufficiently similar to provide evidence of a common plan or scheme.

Witness 6 testified that he worked for Gibbs when he was 19 years old. Witness 6 testified that Gibbs initiated a lot of innocuous contact, such as hugs and back-cracking. On one occasion after Gibbs cracked Witness 6's back, Gibbs laid Witness 6 down and touched his penis. Witness 6's testimony was sufficiently similar to the 13-, 14-, and 30-year-old complainants' to provide evidence of Gibbs's plan or scheme of using a position of authority over an isolated young man to initiate contact that was initially innocuous, but became sexual.

Witness 7 testified that he worked for Gibbs when he was 16 years old. Witness 7 testified that Gibbs tried to assume a fatherly role over him, and initiated a lot of hugs. Witness 7 testified that Gibbs began to insert his leg between Witness 7's legs during hugs and that Gibbs would rub his groin on Witness 7 during hugs and while cracking Witness 7's back. Witness 7's testimony thus provided evidence of Gibbs's plan or scheme to use his position of authority over an isolated young man to initiate innocuous contact that eventually turned sexual. Witness 7's testimony also provided evidence that Gibbs would rub his genitals against another person for the purposes of sexual gratification, a separate proper purpose.

We also reject Gibbs's argument that the prosecutor did not sufficiently notify Gibbs of its intent to use the testimony of Witness 8. The prosecutor filed a motion that identified Witness 8 as a miscellaneous witness, and the prosecutor's motion also indicated that the prosecutor intended to call all witnesses to testify about Gibbs's common plan or scheme. Accordingly, Gibbs was sufficiently notified of the prosecutor's intent to call Witness 8.

Witness 8 testified that he worked for Gibbs when he was 13 or 14 years old. According to Witness 8, Gibbs was always touching him, giving him hugs, and "peck[ing]" his neck. Gibbs gave Witness 8 a back rub at a client's house and suggested that Witness 8 take his pants off, but Gibbs stopped when the client returned. Witness 8's testimony, while notably not about other wrongs, certainly concerned other acts. Witness 8's testimony was substantially similar to the complainants' testimony and tended to show that Gibbs had a practice of isolating boys over whom he had authority and engaging in innocuous contact that he would turn into sexual contact. The fact that Witness 8 testified that Gibbs stopped when Witness 8 was no longer isolated— because the client returned—provided evidence of Gibbs's common plan.

Finally, we reject Gibbs's argument that this evidence was substantially more prejudicial than probative. Gibbs contends that this evidence was prejudicial because it allowed the jury to infer that Gibbs had a "taste" for young boys and allowed the prosecutor to argue that he had a propensity to engage in certain conduct.

MRE 404(b)(1) is a rule of inclusion, not exclusion.[28] "Evidence relevant to a noncharacter purpose is admissible under MRE 404(b) even if it also reflects on a defendant's

---

[28] *Mardlin*, 487 Mich at 615.

character."[29] Unfair prejudice occurs if use of the evidence would be inequitable or if there is a danger that the jury will give it undue or preemptive weight.[30] "[T]he fear of prejudice does not generally render the evidence inadmissible," nor does the fact that the evidence is damaging.[31] The prejudicial effect of the evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight, or when use of the evidence is inequitable.[32]

Here, the evidence of Gibbs's other acts was admissible for the proper purpose of showing his plan or scheme for exploiting isolated boys and young men over whom he had authority. The evidence was highly relevant because it tended to show that an absence of mistake or accident in Gibbs's various contacts with the complainants. That the evidence also reflected on Gibbs's character did not render it irrelevant. Compared to the testimonies of the complainants themselves, the other witnesses' testimonies were not so shocking or salacious that there was a danger the jury would give the other-acts evidence preemptive weight. Finally, as discussed below, the trial court properly instructed the jury on the proper use of this evidence.

We conclude that the evidence was not unfairly prejudicial because it was more than marginally probative, and because there was little danger that the trier of fact would give it undue or preemptive weight.

## 4. JURY INSTRUCTION

Gibbs contends that the trial court erred when it did not properly instruct the jury on the use of the MRE 404(b) evidence or restrict the various witnesses' testimonies to specific counts. We disagree.

The trial court instructed the jury regarding the MRE 404(b) witnesses as follows:

You have heard evidence that was introduced to show that the Defendant committed improper acts for which he is not on trial. This evidence included the allegations of sexual acts committed by the Defendant with [Witness 4, Witness 5, Witness 6, and Witness 7]. If you believe this evidence you must be careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that the Defendant specifically meant to engage in certain forms of physical contact that was meant for sexual purposes or sexual gratification, and or that the Defendant used a plan, system, or characteristic scheme that he has used before or since. You must not consider the allegations of sexual acts committed by the [Witness 4, Witness 5, Witness 6, and Witness 7]

---

[29] *Id.* at 615-616 (emphasis removed).

[30] *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

[31] *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995).

[32] *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998); *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

-10-

for any other purpose. For example, you must not decide that the Defendant is a bad person or that he is likely to commit crimes. You must not convict the Defendant here because you think he is guilty of other bad conduct.

The trial court's instructions were consistent with the law and the fact that these witnesses were witnesses under MRE 404(b), as opposed to MCL 768.27a, and that the jury could only consider their testimonies for a proper purpose. Accordingly, we conclude that the record does not support Gibbs's contentions that the trial court did not adequately identify how the jury could use these witnesses' testimonies.

To the extent that Gibbs contends that the trial court erred by not instructing the jury on the use of testimony by law-enforcement officers, we note that counsel indicated on the record that counsel had met with the prosecutor and trial court in chambers and agreed on all the jury instructions except those related to lesser-included offenses. When counsel affirmatively approves of jury instructions, the defendant has waived any error regarding those instructions.[33] Therefore, counsel affirmatively approved of the jury instructions and Gibbs has waived our review of this issue.

## 5. INEFFECTIVE ASSISTANCE

Gibbs contends that counsel was ineffective for failing to challenge the MRE 404(b) evidence and the trial court's jury instructions. Because we conclude that the trial court properly admitted this evidence and issued proper instructions, we reject Gibbs's argument. Counsel is not ineffective for failing to make futile challenges.[34]

## B. MCL 768.27a WITNESSES

## 1. STANDARD OF REVIEW AND ISSUE PRESERVATION

As discussed above, we review for an abuse of discretion preserved challenges to the admission of evidence.[35] Here, Gibbs contended that the trial court should not admit the testimony of the MCL 768.27a witnesses on the grounds that it was dissimilar to the charged acts and would cause confusion. Therefore, this issue is preserved.

However, Gibbs did not challenge this evidence on the grounds that it deprived him of due process. A defendant must specifically raise a constitutional issue before the trial court in

---

[33] *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009).

[34] *Ericksen*, 288 Mich App at 201.

[35] *Layher*, 464 Mich at 761.

order to preserve that issue.[36]  Because Gibbs failed to do so, we review this issue for plain error affecting his substantial rights.[37]

## 2. SUFFICIENCY OF THE TRIAL COURT'S ANALYSIS

Gibbs contends that the trial court erred by admitting the MCL 768.27a witnesses' testimony because the testimony was cumulative, unduly prejudicial, and confusing.  We disagree.

In pertinent part, MCL 768.27a(1) provides that

in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

The purpose of MCL 768.27a is to broaden the range of evidence admissible in CSC proceedings involving minors.[38]  MCL 768.27a permits the trial court to admit evidence that MRE 404(b) would otherwise exclude.[39]

However, the trial court must still weigh the probative value and prejudicial effect of the evidence under MRE 403.[40]  Evidence that supports a propensity inference or a victim's credibility has probative value.[41]  But evidence may be unduly prejudicial depending on

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.[42]

Evidence is also unfairly prejudicial if it leads to the danger of confusing the issues, misleading the jury, or the presentation of needlessly cumulative evidence.[43]  The trial court should separately balance each piece of evidence.[44]

---

[36] *Kimble*, 470 Mich at 309.

[37] See *Carines*, 460 Mich at 763.

[38] *People v Smith*, 282 Mich App 191, 204; 772 NW2d 428 (2009).

[39] *People v Watkins*, 491 Mich 450, 470; 818 NW2d 450 (2012).

[40] *Id*. at 486.

[41] *Id*. at 486-487, 492.

[42] *Id*. at 487-488.

[43] *Id*. at 489.

Here, the trial court found that the evidence as a whole was logically relevant because it showed Gibbs's propensity, his pattern over time, and because the evidence that so many similar acts occurred lent the complainants credibility. The trial court found that the probative value of the evidence outweighed its prejudicial effect.

We agree that the trial court erred when it failed to separately evaluate each piece of MRE 768.27a evidence. The Michigan Supreme Court has indicated that the trial court must do so.[45] However, we conclude that this error was harmless.

A preserved evidentiary error is harmless unless it "more probably than not" would have been outcome determinative.[46] As discussed above, the prejudicial effect of the evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight, or when use of the evidence is inequitable.[47]

Here, as the trial court recognized, the evidence was highly relevant in multiple ways, and we are not convinced that the evidence was unduly prejudicial. Given the similarity of the acts to the charged acts—we note that Witness 1, Witness 2, and Witness 3 each testified that Gibbs isolated and molested them while they were young men or boys and while Gibbs was in a position of authority over them—the acts were sufficiently similar to the crimes charged. We recognize that not all of the acts involving fellatio were similar to the act involving contact with the 8-year-old complainant. However, Witness 1, Witness 2, and Witness 3 would have been able to testify about Gibbs's inappropriate sexual contact with them as it related to the 8-year-old complainant. Some of the acts were temporally distant, but the acts were not infrequent. And there was a strong reliability concerning the MCL 768.27a witnesses' testimonies. Therefore, even *had* the trial court performed a full analysis on each piece of this evidence, we believe it would have come to the same conclusion: this evidence was not unduly prejudicial. Therefore, this error was not outcome determinative.

Concerning Gibbs's arguments that the trial court erred because the evidence was needlessly cumulative and confusing, we are not convinced that the trial court's outcome fell outside the reasonable range of principled outcomes. Here, the trial court considered the amount of evidence and the possibility of confusion and implemented measures to reduce the jury's confusion. Further, the record supports the prosecutor's argument that even more witnesses were available to testify under both MCL 768.27a and MRE 404(b). The trial court struck a balance between admitting enough evidence to show propensity while excluding cumulative evidence. Therefore, we conclude that the trial court did not err on these grounds.

---

[44] *Id*.

[45] *Id*.

[46] *People v Lukity*, 460 Mich 484, 494-495; 596 NW2d 607 (1999).

[47] *Crawford*, 458 Mich at 398; *Blackston*, 481 Mich at 462.

## 3. DUE PROCESS

Gibbs contends that the trial court's admission of the MCL 768.27a evidence violated his rights to due process under the Michigan and Federal constitutions. We disagree.

The essential purpose of due process is to ensure fundamental fairness.[48] The question is whether the admission of evidence "so infused the trial with unfairness as to deny due process of law."[49] Because we have concluded that the evidence was not unduly prejudicial, we conclude that it did not infuse the trial with unfairness. Accordingly, we reject Gibbs's due process challenge.

## IV. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW AND ISSUE PRESERVATION

This Court will not reverse a conviction on the basis of prosecutorial misconduct unless the defendant "timely and specifically" challenges the alleged misconduct before the trial court, or unless a failure to review the issue would result in the miscarriage of justice.[50] Here, Gibbs did not challenge these issues before the trial court. Accordingly, they are not preserved.

We review unpreserved claims of prosecutorial misconduct for plain error.[51] We will not find error requiring reversal if a curative instruction could have alleviated the effect of the prosecutor's misconduct because curative instructions are "sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements," and because we presume that jurors follow their instructions.[52]

### B. LEGAL STANDARDS

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."[53] The prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice

---

[48] *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005). See *Estelle v McGuire*, 502 US 62, 75; 112 S Ct 475; 116 L Ed 2d 385 (1991).

[49] *Estelle*, 502 US at 75 (quotation marks and citation omitted).

[50] *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008).

[51] *Id*. at 235; *Carines*, 460 Mich at 763.

[52] *Unger*, 278 Mich App at 235.

[53] *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868 (1974). See *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).

and, in doing so, denied the defendant a fair and impartial trial.[54]  We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments.[55]  Otherwise improper remarks that respond to improper arguments by defense counsel may not be prosecutorial misconduct.[56]

## C.  THE 8-YEAR-OLD CHILD'S KNIFE

Gibbs contends that the prosecutor committed misconduct by questioning the 8-year-old complainant about his knife because there was no factual basis for the line of questioning.  We reject this argument.

A review of the 8-year-old complainant's testimony indicates that there was clearly a factual basis for the line of questioning:

*Q*:     Why do you keep a pocket knife under your pillow?

*A*:     For protection.

*Q*:     From who or what?

*A*:     I don't know.

*Q*:     Before this happened with Larry did you do that with the knife?

*A*:     Yes.

*Q*:     With a knife – oh, okay.  So, you've always –

*A*:     Like with a little pocket knife.

We note that Gibbs does not raise any other issues regarding this line of questioning.  Because the 8-year-old complainant testified that he did keep a knife under his pillow, there was clearly a factual basis for the prosecutor's question regarding whether he kept a knife.  Accordingly, we reject Gibbs's argument that this line of questioning was somehow improper because it lacked a factual basis.

## D.  RELIGIOUS BELIEFS

Gibbs contends that the prosecutor committed misconduct by questioning his daughter, S. Gibbs, about her religious beliefs.

---

[54] *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007); *People v Jones*, 468 Mich 345, 353; 662 NW2d 376 (2003).

[55] *Dobek*, 274 Mich App at 64.

[56] *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996).

MRE 610 prohibits the prosecutor from questioning a witness about his or her religious beliefs to enhance or impair their credibility. However, a prosecutor may question a witness about religious beliefs as "part of a relevant inquiry about the witness' activities at the time" of the crime."[57]

Here, S. Gibbs testified that her mother was a strict Catholic religious and her father did not attend church because he was not a Catholic, but he was very supporting and encouraging of her religious upbringing. The prosecutor raised this line of questioning among other questions regarding whether anyone else was at the home on Sundays when the 13- and 14-year-old complainants were there. Reviewing these statements in context, we conclude that they do not constitute prosecutorial misconduct.

## E. UNSUPPORTED CLOSING ARGUMENTS

Gibbs contends that the prosecutor committed misconduct during closing arguments.

A prosecutor may not argue the effect of testimony that was not in evidence.[58] However, a prosecutor may argue all the facts in evidence and all reasonable inferences arising from them, as they relate to the prosecutor's theory of the case.[59]

Witness 6 testified that when police contacted him regarding Gibbs, he initially denied that sexual conduct occurred because he wanted to forget about it. Witness 6 testified that he later contacted the detective to inform her that conduct did occur because he felt guilty about lying to her. Accordingly, we conclude that the prosecutor's argument was within the reasonable inferences arising from the evidence.

## F. INCORRECT STATEMENT OF LAW

Gibbs contends that the prosecutor committed misconduct by contending that the jury should not convict Gibbs of the lesser included offense of CSC IV because CSC IV was "for people who have no relationship to the victim." We will not reverse on this ground because the trial court properly instructed the jury on CSC IV, and the trial court's instruction cured any possible error.[60]

## G. APPEAL TO CIVIL DUTY

Gibbs contends that the prosecutor improperly appealed to the jury's civic duty. We disagree.

---

[57] *People v Calloway,* 180 Mich App 295, 298; 446 NW2d 870 (1989).

[58] *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994).

[59] *Bahoda*, 448 Mich at 282; *Unger*, 278 Mich App at 236.

[60] See *People v Mesik (On Reconsideration)*, 285 Mich App 535, 542; 775 NW2d 857 (2009).

A prosecutor may not appeal to a juror's sense of civic duty because it injects issues broader than the guilt or innocence of the accused into the trial.[61]  Here, the prosecutor asked the jury to "hold [Gibbs] responsible as members of his community *because the evidence has proven to you that these crimes occurred.*"  Reviewing the prosecutor's argument in context, we conclude that the prosecutor did not impermissibly inject issues broader than Gibbs's guilt or innocence into the trial.  The prosecutor's wording was indelicate, but the prosecutor's appeal was for the jury to convict on the basis of the evidence.  We conclude that this remark did not infect the trial with unfairness.

### H.  ARGUMENTS CONCERNING OTHER ACTS EVIDENCE

Gibbs contends that the prosecutor's arguments concerning the other acts evidence admitted under MRE 404(b) and MCL 768.27a were unfair and conflated evidence admitted under the separate provisions.  After reviewing the prosecutor's arguments, we disagree.  A prosecutor may argue all the facts in evidence as they relate to the prosecutor's theory of the case.[62]  We conclude that the prosecutor's arguments were proper arguments on the evidence.

### I.  QUESTIONS REGARDING THE COMPLAINANTS' CREDIBILITY

Gibbs contends that the prosecutor committed misconduct by asking Gibbs to comment on the credibility of the witnesses against him.  We disagree.

The prosecutor may not ask the defendant to comment on the credibility of the prosecutor's witnesses.[63]  Here, on direct examination, Gibbs testified that each of the witnesses against him were lying, had some reason to fabricate a story against him, or were mistaken.  On cross-examination, the prosecutor asked Gibbs:

> So sir, if I have this correctly you're testimony before this Court today is that 11 men and young boys have come in this courtroom and lied under oath about inappropriate sexual contact with you?  That's your testimony?

After reviewing the prosecutor's question in light of Gibbs's answers and testimony on direct examination, we conclude that the prosecutor's question on cross-examination was a proper response to Gibbs's trial strategy.  Alternatively, we conclude that this line of questioning did not prejudice Gibbs because it was cumulative to testimony that Gibbs had already given.

### J.  SYMPATHY FOR THE COMPLAINANTS

Gibbs contends that the prosecutor improperly elicited sympathy for the complainants by urging the jury to think about how difficult it would be for them to testify.  The prosecutor may

---

[61] *Bahoda,* 448 Mich at 283.

[62] *Id*. at 282; *Unger*, 278 Mich App at 236.

[63] *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985).

argue that the jury should or should not believe a witness.[64]  Here, the prosecutor's comments concerning the difficulty of testifying about sexual assault and intimate sexual details was made in the context of her argument that the witnesses were credible.  Reviewing the prosecutor's comment in context, we conclude that her argument was a proper credibility argument.

## K.  ASKING THE WITNESSES TO STAND

Gibbs contends that the prosecutor committed misconduct by asking the witnesses to stand if they testified, including the MRE 404(b) witnesses, because it permitted the jury to infer that Gibbs was a pedophile.  Having reviewed the prosecutor's comment, we conclude that this was a proper argument on the weight of the evidence.

## L.  INEFFECTIVE ASSISTANCE

Gibbs contends that counsel was ineffective for failing to challenge the various instances of prosecutorial misconduct.  We reiterate that counsel is not ineffective for failing to make futile challenges.[65]  Because the prosecutor's arguments were proper, counsel was not ineffective for failing to challenge the prosecutor's proper arguments.

## V.  CONCLUSION

We conclude that the trial court did not plainly err when it permitted a joint trial on charges involving all four complainants.  We conclude that the trial court did not abuse its discretion or otherwise err in allowing the testimony of the MRE 404(b) and MCL 768.27a witnesses.  To the extent that the trial court failed to individually analyze the testimony of the MCL 768.27a witnesses, we conclude that this error was harmless.  Having reviewed Gibbs's multitude of prosecutorial misconduct challenges, we conclude that each is without merit.

We affirm.

/s/ Patrick M. Meter
/s/ William C. Whitbeck
/s/ Michael J. Riordan

---

[64] *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005).

[65] *Ericksen*, 288 Mich App at 201.

-18-